**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**PAULA LABAUVE LAMBETH**                                                            **PLAINTIFF**

v.                                                                    **CAUSE NO.:** 1:23cv165 HSO-BWR

**PennyMac FINANCIAL SERVICES, INC.,
DEAN MORRIS LLC,
And
R&D DEVELOPMENT LLC**                                                        **DEFENDANTS**

**COMPLAINT and REQUEST FOR INJUNCTIVE RELIEF**
(Jury Trial Requested)

COMES NOW, the Plaintiff, Paula Labauve Lambeth (Ms. Lambeth), and makes her complaint against the Defendants, PennyMac Financial Services Inc. (PennyMac), Dean Morris, LLC (Dean Morris), and R&D Development LLC (R&D) and in support thereof states the following:

INTRODUCTION/FEDERAL LAW

This suit alleges wrongful foreclosure and breach of contract based on the non-judicial foreclosure of the Plaintiff's home by the loanholder, PennyMac, and the substitute trustee, Dean Morris. Defendant R&D is listed for the sole purpose of injunctive relief, and only appears in that section of the complaint. No allegation of liability for damages is made against R&D.

Because the loan was a USDA-guaranteed loan, the lender and servicer (in this case the substitute trustee) was bound by 42 U.S.C.1471 and its underpinning federal regulations on loan servicing and foreclosing found at 7 CFR 3555, *et. seq.* Ms. Lambeth alleges that PennyMac and Dean Morris violated those regulations by foreclosing on her home without notice, and by "dual-tracking" her loan; that is,

pursuing both loan modification and foreclosure simultaneously - a practice prohibited by previous federal rulings.

PARTIES AND JURISDICTION

1.

Ms. Lambeth is an adult resident of the State of Mississippi, residing in Hancock County.

2.

PennyMac is a foreign corporation, organized under the laws of the State of Delaware, but headquartered in the State of California, and may be served by process on its agent, CT Corporate System, 645 Lakeland East Dr., Ste. 101, Flowood, MS 39232.

3.

Dean Morris, LLC is a foreign limited liability company, formed under the laws of, and headquartered in, the State of Louisiana, and may be served b y process on its agent, Elizabeth Crowell, 855 South Pear Orchard Rd., Ste. 404, Ridgeland, MS 39157.

4.

Jurisdiction and Venue are proper under 28 U.S.C. 1331 because the suit arises under federal law - specifically 42 U.S.C. 1471 *et. seq.,* and 7 C.F.R. 3555 *et. seq.* and an amount in controversy exceeding $75,000.00.

FACTS

5.

On or about April 17, 2017, Ms. Lambeth purchased her home, located at 1314 Sharon St., Waveland, MS.

6.

To finance the purchase of the home, Ms. Lambeth obtained an USDA-guaranteed loan through Everett Finance, who almost immediately sold the loan to Defendant PennyMac, a large mortgage lending company started in 2010 which specializes in consumer-direct lending and servicing almost exclusively performed online or via telephone servicing centers.[1]

7.

As part of the purchase process, Ms. Lambeth executed a note, eventually sold to PennyMac, which specified the interest rate to be paid as well as a payment schedule.

8.

Up to and until September of 2022, Ms. Lambeth paid in accordance with the terms of the note, although on one instance the loan was modified to allow her to stay current and within the terms of the loan.

9.

During the month of September 2022, Ms. Lambeth suffered several family tragedies, as well as began new employment, and as a result she fell 30 days behind.

10.

The next month, when she attempted to make a double-payment online, she found that she was blocked from making any payment at all; when she telephoned PennyMac for an explanation, she was told that because she was over 30 days overdue, she was in default and the loan would be modified again, and that she would be emailed the application and other paperwork to complete and sign and return, as was done on the previous instance.

11.

---

[1] *See Wikipedia - PennyMac retrieved 07/03/2023;*
https://en.wikipedia.org/wiki/PennyMac_Financial_Services

Weeks passed without Ms. Lambeth receiving the modification application, and she made contact with PennyMac on numerous occasions requesting they forward, - via email, regular mail, courier, or any other means - the modification paperwork, as she had been locked out of the payments portion of the website, and was unable to make any payment at all (presumably until the modification application had been received and completed by her, then reviewed and approved by PennyMac).  In each instance she was told that the modification application would be forwarded to her soon.

12.

On or about February 28, while reviewing her mail, Ms. Lambeth came across a 'junk mail' advertisement that stated that her home "will soon be, or may have been" foreclosed upon.  When she telephoned PennyMac for an explanation they told her that indeed her home was being sold at a foreclosure auction the next day, but that she should check her email often as the modification paperwork should be arriving very soon.

13.

On March 01, 2023, the day of the foreclosure sale, approximately one hour before the scheduled sale, Ms. Lambeth received the loan modification application and associated paperwork.  She attempted, but was unable to complete the paperwork in time, and the foreclosure sale went forward.  Two days later Ms. Lambeth found an eviction notice posted to her front door. She had not been notifed of the sale at any point by either the lender or the substitute trustee, and had she not received the junk mail advertisement, would not have been aware that it had happened until she received the eviction notice.

LIABILITY OF THE DEFENDANTS

14.

Athough the Defendants PennyMac and Dean Morris occupy the respective positions of lender and substitute trustee, they are jointly and severally liable on all liability counts, as they acted in furtherance of a common scheme with a common goal of depriving Ms. Lambeth of her home and the equity that she had invested in that home.

15.

BREACH OF CONTRACT - GOOD FAITH AND FAIR DEALING

Defendants breached their duty of good faith and fair dealing simultaneously when PennyMac refused to allow Ms. Lambeth to come current on her loan (in violation of the terms of the note, as well as 7 CFR 3555, and Dean Morris LLC, when they proceeded to foreclosure without making notice to Ms. Lambeth. This breach caused damage to, and continues to cause damage to Ms. Lambeth, and places a cloud upon the title to her property.

16.

Pursuant to subpoena by the foreclosure-sale purchaser in an unlawful detainer proceeding, Dean, Morris LLC did produce a fair-debt collection letter and notice that they purportedly sent to Ms. Lambeth, but it addressed to her at an address that is unknown to her, and not where she was living at the time. Both defendants knew exactly where she was living at the time, however, one of them had been collecting payments on the property for years, while the other was planning to foreclose on it in a few short months.

17.

Other notices and correspondences required by the note, or federal or state regulation were also never received by Ms. Lambeth, and when produced by Dean Morris pursuant to subpoena, they were post-dated with the date "June 23, 2023" - almost *a full three months after the foreclosure sale*, indicating that they were created after the fact, in an attempt to create a file that was in compliance with regulation and the note, when in actuality the required notices never existed. None of the required certified mailings were ever made, as the headmark on all the (postdated) correspondence plainly states: "Via Regular Mail". These breaches of contract or federal regulation caused damage to, and continues to cause damage to Ms. Lambeth, and places a cloud upon the title to her property.

PROMISSORY AND EQUITABLE ESTOPPEL

18.

Defendants were estopped from going ahead with the foreclosure sale by their multiple, repeated assurances to Ms. Lambeth that her loan would be modified, and that she did not need to make any payments while that modification was pending.

BREACH OF CONTRACT - VIOLATION OF TERMS

19.

Defendants breached their contract with Ms. Lambeth when they caused the foreclosure sale to happen because doing so violated the terms of the deed of trust and other contractual documents which provided that she be allowed to come current on the loan, that modification would be made if it could be, and that certain steps would be taken and notification given before the property could be foreclosed upon. This breach caused damage to, and continues to cause damage to Ms. Lambeth, and places a cloud upon the title to her property.

20.

NEGLIGENCE

The Defendants had a duty to exercise ordinary caution in the discharge of their contractual obligations under the Deed, Note, and federal and state law and regulation, and breached that duty when they failed to allow Ms. Lambeth to come current, failed to timely forward to her the loan modification application, and failed to notify her that her house was being foreclosed upon. This negligence was the proximate cause of prior and continuing damages to Ms. Lambeth, as well as puts a cloud on the title to her property.

WRONGFUL FORECLOSURE

21.

Ms. Lambeth makes this action under a wrongful foreclosure theory as well. She was never provided a correct, accurate, and complete statement of the amount due, and never allowed the opportunity (despite numerous requests) to come current on the loan, all of this in violation of Mississippi liaw, federal FDHA loan regulation, and the terms of the Note and Deed. This wrongful foreclosure did and still does cause Mr. Lambeth damages.

22.

Defendants' assurances that the home was not going into foreclosure, while simultaneously pursuing foreclosure, constitute a wrongful foreclosure which did damage and still does cause Ms. Lambeth damages.

DAMAGES

23.

Ms. Lambeth suffered the following damages due to the breaches and violations described above:

Impairment/Inability to sell property

Loss of use of property

Attorneys fees

Mental and Emotional distress

Compensatory Damages from above breaches and torts

Statutory or Regulatory Damages from above violations

Out of pocket expenses and incidental costs

PUNITIVE DAMAGES

24.

The above acts and omissions, and breaches of contract and violations of regulation or statute demonstrate the defendants acted with malice or at least gross negligence, as well as a willful, wanton, and reckless disregard for the rights of Ms. Lambeth, and she is entitled to punitive damages against both defendants.

25.

INJUNCTIVE RELIEF

Defendant R&D Development LLC is a Mississippi Domestic Limited Liability Corporation, and may be served at its headquarters located at 20 E. 52nd St., Gulfport, MS 39507. Or through its registered agent, Robert Wood, at that same address.

26.

On or about March 1, 2023 Defendant R&D purchased the home of the plaintiff at the foreclosure sale that is the subject matter of this suit. Two days later, R&D caused to have an eviction notice posted on the Plaintiff's front door. Subsequently, defendant R&D brought an illegal entry and detainer action against the Plaintiff, requesting that she be ejected from the property. Ms. Lambeth respectfully prays that this Honorable Courty temporarily enjoin R&D from pursuing that action

or making such an ejection, should it be ordered by the Hancock County Court, while this action is pending because this action is dispositive as to the question of whether or not the foreclosure and subsequent sale of the property were valid in the first place.

Ms. Lambeth has offered and continues to offer to pay reasonable rent to R&D during the pendency of this action and would request that she be allowed to do so in place of a preliminary injunction bond.

27.

Basis for Preliminary Injunction

a) Ms. Lambeth will clearly suffer irreparable harm should she be ejected from her home and R&D be allowed to take possession.  Not only will she become homeless at least temporarily, R&D has stated that it intends to make renovation to the home and sell the property -  it is unknown what any future buyer might do with the property, or whether her home will even be standing when this court makes its final ruling on whether or not the foreclosure under which precipitated R&D's claim of ownership was valid.

b) There is no other remedy that would allow Ms. Lambeth to continue living in her home and her home to stay intact while rightful ownership is determined, where the alternative is to let a development corporation which intends to do major construction on the home and sell it, take possession.

c) Ms. Lambeth would clearly suffer the greater harm were she to be put on the street and made homeless while the question of wrongful foreclosure was litigated.  Such a contingency would be life-altering and possibly cost her everything she has, as well as all the equity she put into the home.  Conversely, where Ms. Lambeth offers to pay reasonable rent, R&D suffers only ephemeral, anticipatory expectancy damages which are ameliorated by the rent paid.

d) Given that one defendant has already produced documents showing that they are in violation of federal law on notice of foreclosure, Ms. Lambeth avers that her likelihood of success in the underlying suit is high.

e) The public interest is better served by allowing litigants alleging wrongful foreclosure to stay in their homes (with rent or bond to the foreclosure buyer), than to generate an entire class of homeless, who, at the end of the day it may be ruled were entitled to their homes all along, than it is by allowing development corporations to pursue anticipatory profit from properties to which they may never have had valid title to in the first place.

## Prayer for Relief

Ms. Lambeth respectfully prays for the following relief from this Honorable Court:

a) Recission and Cancellation of the Foreclosure sale, and of the note and deed of trust, and removal of all any associated clouds on Ms. Lambeth's title to the property.

b) Reasonable attorney's fees

c) Compensatory damages for loss of value of the property and any other compensatory damages supported by the evidence and allowed by law.

d) Pre and Post-judgment interest

e) Statutory Damages supported by the evidence and allowed by law.

f) Out of Pocket Expenses and incidental damagtes

g) Punitive Damages

h) Preliminary Injunctive Relief

i) Any other damages to which she may be entitled.

Respectfully Submitted this the 7th day of July, 2023.

                                        PAULA LABAUVE LAMBETH

                        By:    *Bruce L. Barker*

Bruce L. Barker
Attorney at Law
MS Bar No. 103247
Post Office Box 518
Pass Christian, MS 39571
Tel: 228-363-9433
BruceLBarker@gmail.com